UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

RALPH BRANNON,

            Plaintiff,

   -v-                             No.  09CV4335-LTS

THE CITY OF NEW YORK,

            Defendant.

--------------------------------------------------------x

RALPH BRANNON,

            Plaintiff,

   -v-                             No.  11CV3378-LTS

THE CITY OF NEW YORK,

            Defendant.

--------------------------------------------------------x

<u>Memorandum Opinion And Order</u>

       Plaintiff Ralph Brannon ("Brannon" or "Plaintiff"), proceeding <u>pro se</u>, has

brought two actions against the City of New York, asserting discrimination and retaliation

claims pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 <u>et seq.</u>, as well

as a pendent state law discrimination claim.[1]  On November 7, 2011, Plaintiff's two cases were

---

[1]     Although Plaintiff makes an argument in his Opposition Brief that the "undisputed facts presented entitle Plaintiff to a finding of a hostile work environment as a matter of law" (<u>see</u> Plaintiff's Answer and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Memo") at p. 8), "it is well settled that a Court should not on summary judgment consider factual allegations and legal theories not raised in the complaint."  <u>Brown v. Magistro</u>, No. 10CV3705-CS-PED, 2011 WL 6399514, at *3 (S.D.N.Y. Dec. 20, 2011); <u>see also</u> <u>Bush v. Fordham</u>

consolidated for all pretrial purposes, including dispositive motion practice, pursuant to the order of Magistrate Judge Michael H. Dolinger.  (See Docket Entry No. 60.)[2]  On August 6, 2012, the consolidated cases were placed on the Court's suspense calendar pending the resolution of an underlying New York State Article 78 proceeding.  (Docket Entry No. 75.)  The Article 78 proceeding concluded in February 2015, at which point the consolidated cases were returned to the Court's active calendar.  (See Docket Entry Nos. 81-82.)  Defendant City of New York ("City" or "Defendant") thereafter moved for summary judgment, seeking dismissal of the consolidated cases.  (Docket Entry No. 83.)  Defendant's motion was accompanied by a notice pursuant to S.D.N.Y. Local Civil Rule 56.2 informing Plaintiff of his burden of coming forward with evidence in opposing Defendant's motion.  (Docket Entry No. 85.)  The Court has jurisdiction of these cases pursuant to 28 U.S.C. § 1331.

The Court has carefully considered the parties' submissions.  For the reasons that follow, the City's motion is granted in its entirety, and both of Brannon's actions are dismissed.

---

University, 452 F. Supp. 2d 394, 406 (S.D.N.Y. 2006) (declining to consider alleged instance of discrimination raised for first time in opposition brief and explaining that although "a complaint need not correctly plead every legal theory in supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense.").  Because Plaintiff failed to raise a hostile work environment claim in any of the complaints filed in these consolidated actions, the Court will not consider those arguments here.

[2]    For convenience and clarity, citations correspond to docket number 09CV4335 – Plaintiff's first-filed action – unless otherwise indicated.

BACKGROUND[3]

On March 29, 1999, at the age of 56, Plaintiff Ralph Brannon was appointed as an Agency Attorney, Level I, in Defendant City of New York's Department of Housing Preservation and Development ("HPD"), where he was assigned to the Lead Paint Unit.  (Def. 56.1 St. ¶ 5.)  The title of Agency Attorney is a noncompetitive title with four assignment levels, I through IV.  (Id. ¶ 7.)  Level I attorneys perform legal work "[u]nder supervision, with some latitude for independent judgment and unreviewed action and decision."  (Id.)  Level II attorneys have more freedom to take independent and unreviewed action and perform more sophisticated legal work.  (Id. ¶ 8.)  Level III and Level IV attorneys hold "wide latitude for independent judgment and unreviewed action and decision," while also supervising legal staff and engaging in difficult and complex legal work.  (See id. ¶ 9.)  As a Level I attorney in the Lead Paint Unit, Plaintiff was responsible for prosecuting violations of City codes and regulations governing the presence of lead paint in City housing.  (Id. ¶ 10.)  In or around September 2001, Plaintiff was transferred to HPD's Judgment Enforcement Unit, where his responsibilities included "enforc[ing] and collect[ing] money judgments that the court imposed on respondents."  (Id. ¶¶ 11-12.)  Following his transfer, Plaintiff brought a grievance challenging the transfer, which was ultimately denied.  (Id. ¶ 13.)

---

[3]     Facts recited as undisputed are identified as such in the Defendant's statement pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer.  Citations to the Defendant's Local Civil Rule 56.1 Statement (Docket Entry No. 84, "Def. 56.1 St.") incorporate by reference the Defendant's citations to underlying evidentiary submissions.  Because Plaintiff did not file a Rule 56.1 Counter-statement, the Court considers the facts set forth in Defendant's Rule 56.1 Statement undisputed for the purposes of this motion.  See Fed. R. Civ. P. 56(e)(2); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998) ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."(internal citations omitted)).

In 2002 or 2003, one year after his transfer to the Judgment Enforcement Unit, Plaintiff applied for a position as a Level II Agency Attorney.  (Def. 56.1 St. ¶ 15.)  His application was denied.  (Id. ¶ 16.)  Plaintiff did not apply for any other promotions during the remainder of his time with HPD.  (Id. ¶ 17; see also Pl. Memo at p. 8 ("Plaintiff did apply for a Level II at least once.  Plaintiff believed that any further inquiry into available positions would be futile because of the hostile environment").)  In his deposition testimony, Plaintiff acknowledged that he was aware that HPD had promoted at least one individual over 40 years of age, Robert Vinokur, from Level I to Level II during the time that he was employed there.  (Id. ¶ 18.)

In 2002, Plaintiff disclosed that he had started a part-time law practice, and indicated that he would provide legal services in the areas of wills, trusts and estates and life insurance.  (Id. ¶ 22.)  The circumstances under which a full-time HPD employee may perform secondary employment are strictly limited, and are defined in both the New York City Charter and HPD's regulations.  (Id. ¶ 23.)  Notably, the City Charter contains a provision on conflicts of interest that prevents an individual from using "his official City position or title to obtain any personal advantage for himself, the secondary employer or his clients."  (Id.)  On June 28, 2004, Plaintiff wrote to David Jackson, Assistant Commissioner of HPD's Home Ownership Office of Development, advising Assistant Commissioner Jackson that he was an HPD attorney and that he was interested in purchasing a property over which HPD had oversight.  (Id. ¶¶ 24-25.)  Plaintiff indicated in his letter that he wrote specifically to Jackson because Jackson exercised authority over the sale of the property.  (Id. ¶ 26.)  HPD thereafter conducted an investigation into Plaintiff's activities to determine whether a conflict of interest existed.  (Id. ¶ 27.)  Following the investigation, HPD sent a letter to Plaintiff, dated November 22, 2004, advising

him that it had substantiated the allegations against him related to the June 28, 2004, letter and informing him that such actions were violative of the Department's Code of Conduct.  (Def. 56.1 St. ¶¶ 28-29.)  The HPD letter warned Plaintiff that any further violations of the Department's Code of Conduct would lead to disciplinary action, potentially including dismissal.  (Id. ¶ 30.)

In the Fall of 2007, HPD received a letter from an attorney with Legal Services for New York City detailing an incident that had occurred between Plaintiff and opposing counsel in a case, Legal Services attorney Maura Mills, on September 20, 2007.  (See id. ¶¶ 41-42.)  The letter indicated that Plaintiff had inappropriately touched Ms. Mills and asked her to kiss him after she declined to agree to a stipulation in a case on which they were opposing one another.  (Id. ¶ 42.)  Plaintiff was served with disciplinary charges and asked to appear at an informal conference, where he was represented by counsel.  (Id. ¶¶ 43-44.)  Following the conference, Lynn Lewis, the conference leader, issued a decision in which she noted that, instead of addressing the pertinent charges, Plaintiff's attorney had merely "berated the assembled HPD staff with accusations of inappropriate procedures, arrogance, and worse."  (Id. ¶ 45.)  Based on Ms. Mills' allegations, and Plaintiff's refusal to address them at the conference, Ms. Lewis concluded that Plaintiff's behavior had been "unprofessional, discourteous, inappropriate, disruptive, and unethical," and recommended that his employment be terminated.  (Id. ¶¶ 46-47.)

Thereafter, pursuant to Section 75 of the New York Civil Service Law, HPD commenced a disciplinary hearing against Plaintiff at the City's Office of Administrative Trials and Hearings ("OATH") before Administrative Law Judge Kevin F. Casey ("ALJ Casey").  (Id. ¶ 48.)  A hearing was held on April 2, 2008, at which Plaintiff was represented by counsel, called a witness and introduced documentary evidence.  (Id. ¶ 49.)  ALJ Casey found that Plaintiff had "engaged in bizarre, unprofessional behavior" in the incident involving Legal Services attorney

Mills and that "[h]is actions demeaned Mills and embarrassed the Department." (Def. 56.1 St. ¶ 50.) Ultimately, ALJ Casey concluded that HPD proved the charges against Plaintiff, and recommended a punishment of a 30-day suspension without pay. (Id. ¶ 49.) By letter dated June 12, 2008, Shaun Donovan, the then-HPD Commissioner, advised Plaintiff that he had adopted ALJ Casey's report, found Plaintiff guilty of the charged misconduct, and instituted the recommended penalty. (Id. ¶ 51.)

In January 2010, Plaintiff assumed representation of a tenant in an Article 78 proceeding against the New York City Housing Authority ("NYCHA"). (Id. ¶ 52.) After HPD became aware of Plaintiff's involvement in the proceeding, HPD officials sought to meet with him about this representation. (Id. ¶ 53.) In an email dated May 14, 2010, Plaintiff requested permission from HPD to represent the tenant. (Id. ¶ 54.) HPD denied the request because, under the City Charter's Conflicts of Interest Law, public servants are not permitted to appear as attorneys against the interests of the City in any litigation to which the City is a party. (Id.) The City's Department of Investigation ("DOI") thereafter commenced an investigation into Plaintiff's conduct. (Id. ¶ 55.) The DOI attempted to interview Plaintiff on multiple occasions but was repeatedly rebuffed by Plaintiff. (Id. ¶¶ 55-60.)

On or about August 26, 2010, Plaintiff was served with disciplinary charges related to his representation of a client in legal proceedings contrary to the interests of the City, use of HPD facilities and equipment in his private activities, and his refusal to follow DOI and HPD directives, including failing to appear at interviews and meetings as directed. (Id. ¶ 62.) On November 3, 2010, HPD held an informal conference on these disciplinary charges. (Id. ¶ 63.) Allison Siegal, the conference leader, found that Plaintiff had clearly violated "the Conflicts of Interest Law of the City Charter as Well as Mayoral Executive Order 16 and HPD Code of

Conduct Rule 9," and accordingly recommended that his employment be terminated.  (Def. 56.1 St. ¶¶ 63-64.)  HPD then commenced a disciplinary hearing against Plaintiff, pursuant to Section 75 of the New York Civil Service Law, before ALJ John B. Spooner.  (Id. ¶ 65.)  The hearing was held on June 9 and 23, 2011.  (Id. ¶ 66.)  Plaintiff, who was represented by counsel, was permitted to cross-examine witnesses, testify on his own behalf, call a witness in his defense and introduce documentary evidence.  (Id.)  ALJ Spooner held that HPD had proven four of the five charges against Plaintiff, and recommended that, based on his behavior and past disciplinary record, Plaintiff be terminated.  (Id.)  By letter dated November 17, 2011, HPD Commissioner Matthew Wambua notified Plaintiff that HPD had adopted ALJ Spooner's Report and Recommendation and that Plaintiff's employment would be terminated effective November 18, 2011.  (Id. ¶ 71.)

Plaintiff filed a charge of discrimination based on age with the United States Equal Employment Opportunity Commission ("EEOC") on or about May 21, 2008.  (Id. ¶ 73.) He thereafter received a "Right to Sue" letter, dated January 13, 2009.  (Id.)  On May 5, 2009, Plaintiff filed his initial action, alleging that HPD had discriminated against him in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. 612 et seq., and the New York State Human Rights Law, Executive Law 296.  (Id. ¶¶ 2, 74.)  On May 18, 2011, Plaintiff filed his second action, alleging that Defendant had retaliated against him for filing his initial case. (Id. ¶¶ 3, 74.)  The two cases were consolidated on November 7, 2011 (see Docket Entry No. 60) and, on April 24, 2015, following resolution of the underlying Article 78 proceeding, Defendant filed the instant summary judgment motion.  (Docket Entry No. 83.)

DISCUSSION

Rule 56 Summary Judgment Standard

A court may grant summary judgment in favor of a moving party when that party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Therefore, a party that cannot "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will be unable to survive a Rule 56 motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the burden of demonstrating the absence of a material fact, and the court must be able to find that, "'after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party.'"  Marvel Entertainment, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)).  For the purposes of summary judgment motion practice, a fact is material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).  "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).  To that end, "[w]hen a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "As to issues on which the non-moving party bears the burden

of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case."  Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).

Local Civil Rule 56.1

Southern District of New York Local Civil Rule 56.1(a) provides that, "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Subsection (b) of Rule 56.1 provides that a party opposing a summary judgment motion must supply its own statement of facts that includes "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party [of] . . . material facts as to which it is contended that there exists a genuine issue to be tried."  Furthermore, subsection (d) of the rule requires that each "statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to [admissible] evidence."  Each numbered paragraph in the statement of material facts set forth by the moving party is to be deemed admitted for the purposes of the motion "unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Civil Rule 56.1(c).

The City has submitted a thorough statement of material facts, consisting of 77 numbered paragraphs, complete with citations to relevant, admissible evidence.  (See Docket Entry No. 84, Def. 56.1 St.; Docket Entry No. 86, Declaration of Maxwell Leighton in Support

of Motion for Summary Judgment ("Leighton Decl."), Exs. A-G; Docket Entry No. 87,

Declaration of Dawn Naidu-Walton in Support of Motion for Summary Judgment, Exs. A-U.)

Plaintiff has failed to provide his own Rule 56.1 statement in response.  Thus, for the purposes of

this motion practice, the Court deems the facts proffered by the City to be admitted.  See

Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then

fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be

deemed admitted."); see also American Medical Ass'n v. United HealthCare Corp., No.

00CV2800-LMM, 2007 WL 1771498, at *2 (S.D.N.Y. June 18, 2007) ("When parties decline to

file Rule 56.1 statements, or when the statements they file lack citations or are in some other way

deficient, courts are 'free to disregard' the assertions therein.") (citing Holtz v. Rockefeller &

Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001)); Galasso v. Eisman, Zucker, Klein & Ruttenberg, 310

F. Supp. 2d 569, 574 (S.D.N.Y. 2004) (moving party's Rule 56.1 "facts will be deemed admitted

unless the party opposing the motion submits his own Rule 56.1 Statement, which specifically

denies any controverted assertions of fact made by the movant.") (emphasis added).


Plaintiff's ADEA Discrimination Claims

            "Summary judgment motions in age discrimination cases under the ADEA . . . are

decided using the McDonnell Douglas burden shifting test."  Rubinow v. Boehringer Ingelheim

Pharmaceuticals, Inc., 496 F. App'x 117, 118 (2d Cir. 2012); see also Devlin v. Transportation

Communications Intern. Union, Nos. 95CV0742-JFK, 95CV10838-JFK, 2002 WL 413919, at *6

(S.D.N.Y. Mar. 14, 2002) ("At the summary judgment stage, discrimination claims based on

indirect evidence brought under the ADEA are analyzed using the same McDonnell Douglas

framework as those brought under Title VII.").  "Under McDonnell Douglas, the plaintiff bears

the initial burden of establishing a prima facie case of discrimination.  If the plaintiff does so, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action.  Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination."  Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (internal quotation marks and citations omitted).

### 1.  Failure to Promote

Plaintiff's age discrimination claim against the City appears to be focused upon the City's alleged failure to promote him.  (See Third Amended Complaint ("Am. Compl."), Docket Entry No. 40 ¶¶ 15-44.)  Failure to promote claims are subject to a "specific application requirement" under which a plaintiff must show that he made a specific application for an open position, in order to "protect[] employers from the unfair burden of having to keep track of all employees who have generally expressed an interest in promotion and to consider each of them for any opening for which they are qualified but did not specifically apply."  Petrosino v. Bell Atl., 385 F.3d 210, 227 (2d Cir. 2004); see also Rich v. Associated Brands, Inc., 559 F. App'x 67, 68-69 (Fed. Cir. 2014).  Furthermore, failure to promote is considered a "discrete act" which is subject to the applicable statute of limitations.  Petrosino, 385 F.3d at 220.  "A litigant must have filed a timely charge . . . with the Equal Employment Opportunity Commission and corresponding state agencies as a condition precedent to the filing of an action in federal court pursuant to the Age Discrimination in Employment Act."  Cherry v. City of New York, 381 F. App'x 57, 58 (2d Cir. 2010).  "[T]he statute of limitations for filing a claim with the EEOC is 300 days."  Id.  Therefore, in order to make out his failure to promote claim, Plaintiff must proffer evidence of at least one instance where he applied for, and was denied, a specific

promotion within the 300 days prior to the filing of his charge of discrimination with the EEOC.

Plaintiff has made no such showing.  Plaintiff filed his charge of discrimination with the EEOC on or about May 21, 2008 (Def. 56.1 St. ¶ 73; Leighton Decl. Exs. E, F), and thereafter received a "right to sue" letter, dated January 13, 2009.  (Id.)   In his deposition testimony, Plaintiff indicated that he had applied for a promotion to a Level II Attorney position in 2002 or 2003, but that he was not promoted.  (Def. 56.1 St. ¶¶ 15-16.)  That application clearly falls well outside the bounds of the 300 day statute of limitations for filing an EEOC charge.[4]  Moreover, the City has proffered evidence that Plaintiff has admitted that he made no further applications for promotions.  (See Leighton Decl., Ex. D 57:9-14 ("Q: Did you subsequently apply for a level two position again?  A: I don't believe I ever did.  Q:  Why not?  A:  I think, um, for whatever reason, they were not going to do no justice by me.").)  Plaintiff has not offered any evidence that directly controverts this deposition testimony.  However, on September 10, Plaintiff belatedly filed a letter with the Court to which he annexed a letter to HPD's director of personnel services, which he offered as evidence of an application for a promotion that was made within the 300-day EEOC charge window.  (See Docket Entry Nos. 93, 94.)

Even when viewing this evidence in he light most favorable to Plaintiff, Plaintiff's failure to promote claim is fatally flawed, as he has not presented evidence that establishes all of the required elements of a prima facie case of discrimination based on a failure to promote.  "In order to establish a prima facie case of discrimination for failure to promote [under Title VII and the ADEA], the plaintiff must allege that: '(1) [he] is a member of a

---

[4]     The 300 day window would encompass any conduct that occurred between July 26, 2007 and May 21, 2008, the date on which Plaintiff filed his EEOC charge.

protected class;[5] (2) [his] job performance was satisfactory; (3) [he] applied for and was denied promotion to a position for which [he] was qualified; and (4) the position remained open and the employer continued to seek applicants.'"  See Jenkins v. New York State Banking Dept., Nos. 07CV6322-JGK, 07CV11317-JGK, 2010 WL 2382417, at *12 (S.D.N.Y. June 14, 2010) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 (2d Cir. 2000) (superseded by statute on other grounds).

As an initial matter, Plaintiff has failed to demonstrate that his job performance was satisfactory at the time he applied for the promotion.  See Cruz, 202 F.3d at 565.  While Plaintiff has proffered a performance review for the period of September 27, 2005 through September 27, 2006, this fails to raise an issue of fact as to whether Plaintiff's job performance was satisfactory in 2007 and 2008, the time period during which he asserts the second promotion application was made.  Conversely, Defendant has proffered uncontroverted evidence that Plaintiff engaged in "bizarre" and "unprofessional" behavior during this time period when he inappropriately touched opposing counsel and asked her for a kiss before a September 2007 hearing in housing court.  (See Def. 56.1 St. ¶¶ 41-42.)  Plaintiff was eventually reprimanded by HPD and was suspended for 30 days without pay after an ALJ found that the charges against him had been substantiated.  (See id. ¶¶ 43-51.)  Thus, Plaintiff has failed to raise an issue of material fact with respect to this element of his prima facie case.  Furthermore, Plaintiff has not substantiated the fourth element of the prima facie case: that any "position [to which he applied] remained open and the employer continued to seek applicants."  See Jenkins, 2010 WL 2382417,

---

[5]   It is undisputed that Plaintiff was 56 years old at the time he began working at HPD (Def. 56.1 St. ¶ 5) and thus that he falls within the class of individuals protected by the ADEA.  See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996) (holding that the ADEA "bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older.").

at *12.  Nor has Plaintiff proffered any evidence from which a rational jury could conclude that any refusal to promote him was age-related.  The City has thus successfully demonstrated the absence of any material fact with respect to Plaintiff's failure to promote claim, and the Court therefore grants the City's summary judgment motion seeking dismissal of that claim.

### 2. *Disparate Treatment*

Although no such claim is clearly pleaded, Plaintiff's Third Amended Complaint appears to assert that Plaintiff was the victim of disparate treatment discrimination based on his age.  (See Am. Compl. ¶¶ 10-14.)[6]  "In order to establish a disparate treatment claim under the ADEA, an employee must make a prima facie case of discrimination . . . by showing: (1) that the employee is a member of the protected class, (2) that the employee is qualified for the position, (3) that the employee suffered adverse employment action, and (4) that the circumstances surrounding the action give rise to an inference of age discrimination."  See Abrahamson v. Board of Educ. of Wappingers Falls Cent. School Dist., 374 F.3d 66, 71 (2d Cir. 2004).  "To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities' . . .  Examples of such a change include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less

---

[6]     In his Third Amended Complaint, as well as in his Opposition Brief, Plaintiff refers to involuntary transfers that he believes are indicative of discriminatory animus.  (See Am. Compl. ¶¶ 10-12; Pl. Memo at pp. 1-2, 6-7.)  It is undisputed that Plaintiff was transferred from HPD's Lead Paint Unit to its Judgment Enforcement Unit in or around September 2001.  (Def. 56.1 St. ¶ 11.)  For the reasons explained in the previous section, any discrimination claim based on this transfer is untimely and must be dismissed as such.  (See discussion supra.)  Plaintiff offers no evidence of any other alleged involuntary transfers from which the Court might be able to find that he has substantiated a claim (see generally Pl. Memo), and the allegations contained within his Third Amended Complaint are not sufficient to defeat the City's motion for summary judgment.  See Wright 554 F.3d at 266 ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading.").

distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"  Sanders, 361 F.3d at 755 (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).  As with his failure to promote claim, Plaintiff is unable to meet his burden of establishing a prima facie case of disparate treatment discrimination.

Plaintiff has asserted that, following his transfer from the Lead Paint Unit, HPD "engaged in a continuing pattern and practice of discriminating against him on account of his age with regard to the terms and conditions of his employment, including career advancement, work assignment and compensation," and that, while he was in the Lead Paint Unit, he was assigned "a larger caseload than similarly placed younger attorneys such as Anne Bloomfield, Kevin His, Helen Lai, Rama Rai."  (See Am. Compl. ¶¶ 13-14.)  Plaintiff has failed, however, to proffer any evidence whatsoever demonstrating that he suffered a specific adverse employment action, which is necessary to sustain a discrimination claim based on disparate treatment.[7]  While Plaintiff claims that he was assigned a larger caseload than similarly situated younger attorneys (id. ¶ 14), he has provided absolutely no evidence substantiating this claim.  Plaintiff further asserts that the City "has continually discriminated against [him] in favor of younger attorneys with regard to compensation; even though it continues to assign him a greater caseload that it assigns similarly place [sic] younger Staff Attorneys."  (Id. ¶ 39.)  Once again, Plaintiff relies

---

[7]    While termination of employment is recognized as an adverse employment action for the purposes of evaluating discrimination claims (see e.g., Terry, 336 F.3d at 138), Plaintiff filed the initial complaint in this action prior to his termination and did not amend the complaint in his disparate treatment action to challenge his termination as discriminatory.  (Def. 56.1 St. ¶¶ 71, 74; See Docket Entry Nos. 2, 40.)  His termination therefore can only be considered relevant to his second action, which asserts only a cause of action for retaliation.  (See Docket No. 11CV3378, Docket Entry No. 1.)  Thus, Plaintiff's termination will only be analyzed in connection with his retaliation claim, infra.

solely on the conclusory allegations of his Complaint, which lack any evidentiary support whatsoever.  As the Second Circuit has recognized, "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks, 593 F.3d at 166.  A litigant must come forward with evidence at the summary judgment phase and may not rely solely on his pleadings.  See Wright 554 F.3d at 266.  Thus, the allegations contained within Plaintiff's Third Amended Complaint do not suffice to raise an issue of material fact with respect to any potential adverse employment actions suffered by Plaintiff.

In his opposition brief, Plaintiff points to two occurrences of disciplinary action that he suffered as incidents of discrimination: the letter of admonishment he received after seeking assistance from Assistant HPD Commissioner Jackson with the purchase of a house (Pl. Memo at pp. 2-3; Def. 56.1 St. ¶¶ 23-24), and the disciplinary proceedings he faced following his inappropriate behavior towards Legal Services attorney Maura Mills.  (Pl. Memo at p. 3; Def. 56.1 St. ¶¶ 41-42.)  While courts in this district have recognized that certain acts of discipline may amount to adverse employment actions, see e.g. Tepperwien v. Entergy Nuclear Operations, Inc., 606 F. Supp. 2d 427, 444 (S.D.N.Y. 2009), Plaintiff has again failed to proffer any admissible evidence that either of these particular instances of discipline exhibited any of the indicia of "materially adverse" acts.  See Sanders, 361 F.3d at 755.  More importantly, Plaintiff has not presented any evidence upon which the Court might conclude that these disciplinary acts give rise to an inference of age discrimination.  See Abrahamson, 374 F.3d at 71.  Nothing in the record supports such an inference, and thus Plaintiff has failed to raise a material issue of fact relevant to these allegedly discriminatory acts.  See Wright, 554 F.3d at 266.

For the foregoing reasons, the Court finds that Plaintiff has failed to proffer a

prima facie case or raise a material issue of fact with respect to any of his ADEA discrimination claims.  In light of this determination, the Court grants the City's motion for summary judgment seeking dismissal of these claims.

Plaintiff's ADEA Retaliation Claim

ADEA retaliation claims are analyzed under the same McDonnell Douglas burden shifting framework as ADEA discrimination claims.  See e.g., Jetter v. Knothe Corp., 324 F.3d 73, 75 (2d Cir. 2003).  Therefore, the first step requires a plaintiff to present a prima facie case of retaliation.  Id.  "In order to present a prima facie case of retaliation under Title VII or the ADEA, a plaintiff must adduce 'evidence sufficient to permit a rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition under Title VII [or the ADEA], [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.'" Kessler v. Westchester County Dept. of Social Services, 461 F.3d 199, 205-06 (2d Cir. 2006) (quoting Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001)).  Unlike discrimination cases, "in retaliation cases . . . the ADEA does not define adverse employment action solely in terms of job termination or reduced wages and benefits, and that less flagrant reprisals by employers may indeed be adverse." Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997).  Indeed, to prevail on a retaliation claim under Title VII or the ADEA, a plaintiff must demonstrate that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  See Kessler, 461 F.3d at 207

(quoting Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006)).

Plaintiff asserts his retaliation claim in the complaint in his second-filed action, in which he alleges that "[f]rom the beginning of my present action, the Dept of Housing Preservation and Development ("Hpd") have harrased [sic] and taken retaliatory measures to squash my constitutional right to file and continue this lawsuit."  (See Docket No. 11CV3378, Docket Entry No. 1, Section IIIC.)  He further claims that the retaliatory measures taken against him began in May 2010.  (Id.)  Based upon the facts in the record – as well as a reading of Plaintiff's Opposition Brief – the only act upon which such a claim might be based is the initiation of disciplinary charges against Plaintiff that ultimately led to his termination.  Though Plaintiff claims that the facts giving rise to this claim began in May 2010, he cites no specific retaliatory act that occurred at that time.  The record does indicate, however, that Plaintiff was served with disciplinary charges in August 2010.  (Def. 56.1 St. ¶ 62.)  These charges ultimately resulted in an informal conference, and then a disciplinary hearing before ALJ John B. Spooner. (Id. ¶¶ 63-65.)  Following the hearing, ALJ Spooner issued a Report and Recommendation in which he found that Plaintiff had engaged in egregious misconduct, and recommended that his employment be terminated.  (Id. ¶¶ 66-70.)  In November 2011, the HPD commissioner adopted ALJ Spooner's Report and Recommendation and terminated Plaintiff's employment, effective November 18, 2011.  (Id. ¶ 71.)

Based on these facts, Plaintiff has clearly established the first three elements of his prima facie retaliation case.  The filing of a lawsuit – in this case, Plaintiff's initial discrimination suit – constitutes a "protected activity" for the purposes of ADEA retaliation analysis.  See e.g., Sastri v. KLM Royal Dutch Airlines, No. 92CV5534-DLC, 1995 WL 746458 (S.D.N.Y. Dec. 15, 1995) (holding that a "conventional retaliation claim usually involves

protected activity in the form of the formal filing of a complaint with an agency or the filing of a lawsuit"). HPD was undeniably aware of Plaintiff's 2009 suit, becoming active in the litigation in September of that year. (See Docket Entry No. 4.) And Plaintiff clearly has raised an issue of fact as to whether he suffered an adverse employment action, as the disciplinary charges initiated against him "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68; see e.g., Campbell v. New York City Transit Authority, 93 F. Supp. 3d 148, 177 n.30 (E.D.N.Y. 2015) ("the institution of disciplinary proceedings may in some cases be sufficient to constitute adverse action which would have a deterrent effect on persons wishing to challenge discrimination in the workplace.").

Plaintiff has not, however, proffered any evidence establishing the fourth element of his prima facie case: that a causal connection existed between his filing suit and the disciplinary charges that resulted in his termination. The Second Circuit "has consistently held that proof of causation [for retaliation claims] can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Board of Education, 232 F.3d 111, 117 (2d Cir. 2000). The direct route is clearly foreclosed to Plaintiff, as he has offered no direct proof of any retaliatory animus on the part of HPD whatsoever. Nor has Plaintiff offered circumstantial evidence of "disparate treatment of fellow employees who engaged in similar conduct." Id.

Finally, as the City points out, Plaintiff has failed to demonstrate that his filing suit was "followed closely" by the initiation of disciplinary proceedings. Indeed, courts in this

district have recognized that "retaliation claims relying solely on temporal proximity to

demonstrate a causal connection are difficult to prove, and that the temporal proximity must be

'very close.'"  Chukwueze v. NYCERS, 891 F. Supp. 2d 443, 458 (S.D.N.Y. 2012) (quoting

Clark County School District v. Breeden, 532 U.S. 268, 273 (2001)); see also Mandell v.

County. of Suffolk, 316 F.3d 368, 384 (2d Cir. 2003) (for such a showing to "provide an

independent basis for an inference of causation, temporal proximity must be significantly

greater" than a case with corroborating evidence.).  While the Second Circuit "has not drawn a

bright line to define the outer limits beyond which a temporal relationship is too attenuated to

establish a causal relationship between the exercise of a federal constitutional right and an

allegedly retaliatory action," German-Bakos v. Cornell Co-op Extension, 252 F.3d 545, 554 (2d

Cir. 2001), district courts within the Second Circuit "have consistently held that the passage of

two to three months between the protected activity and the adverse employment action does not

allow for an inference of causation." Murray v. Visiting Nurse Services of N.Y., 528 F. Supp.

2d 257, 275 (S.D.N.Y. 2007) (collecting cases).  Moreover, the Second Circuit has held that

passage of more than a year between the protected activity and the adverse action is sufficient to

dissipate an inference of causal nexus.  See Burkybile v. Board of Education of Hastings-On-

Hudson Union Free School Dist., 411 F.3d 306, 314 (2d Cir. 2005).  Here, it is uncontroverted

that Plaintiff filed his initial discrimination action on May 5, 2009 (see Docket Entry No. 1) and

that the disciplinary charges at issue were not initiated until August 26, 2010, more than 15

months later.  (Def. 56.1 St. ¶ 62.)  Thus, the Court finds that the adverse employment action that

Plaintiff claims was taken in retaliation for the exercise of a protected right was too far removed

from the exercise of that right to establish a causal nexus, and  cannot establish the fourth

element of the requisite prima facie case.  In light of these conclusions, the Court grants the

City's motion for summary judgment and dismisses Plaintiff's retaliation claim.[8]

<u>CONCLUSION</u>

For the foregoing reasons, Defendant City of New York's motion for summary judgment is granted in its entirety as to Plaintiff's federal claims, the Court declines to exercise jurisdiction as to Plaintiff's state law claim, and Plaintiff's consolidated actions are dismissed. The Clerk of Court is respectfully requested to enter judgment in Defendant's favor and close these cases.

The Court certifies pursuant to 28 U.S.C. 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in <u>forma</u> <u>pauperis</u> status is denied for the purpose of appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

This Memorandum Opinion and Order resolves Docket Entry No. 83 in case number 09CV4335 and Docket Entry No. 35 in case number 11CV3378.

SO ORDERED.

Dated: New York, New York
        January 21, 2016

              /s/ Laura Taylor Swain
        LAURA TAYLOR SWAIN
        United States District Judge

**Copy Mailed To:**
Ralph Brannon, Esq.
111-113 West 137th Street, Apt.# 2A
New York, NY 10030

---

[8]      In light of the fact that the all of Plaintiff's federal claims have been dismissed, the Court declines to exercise jurisdiction over his pendent state law claim. <u>See</u> <u>Baylis v. Marriott Corp.</u>, 843 F.2d 658, 665 (2d Cir. 1988) ("when all bases for federal jurisdiction have been eliminated from a case so that only pendent state law claims remain, the federal court should ordinarily dismiss the state claims.").